**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| DH International Ltd.<br><br>Plaintiff,<br><br>v.<br><br>Apple Inc.,<br><br>Defendant. | CIVIL ACTION NO. 1:23-CV-01114<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff DH International Ltd. ("DH International" or "Plaintiff") files this Complaint for patent infringement against Defendant Apple Inc. ("Apple") and states as follows:

**<u>NATURE OF THE ACTION</u>**

1.     This is a civil action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

2.     DH International is the owner of all rights, title, and interest in U.S. Patent No. 7,628,333 (the "'333 Patent") and U.S. Patent No. 9,022,294 (the "'294 Patent") (collectively, the "Asserted Patents"), attached as **Exhibit A** and **Exhibit B** respectively and incorporated by reference in their entirety.

3.     Defendant has infringed and continues to infringe one or more claims of the Asserted Patents by making, using, importing, offering to sell, and selling within the United States, including in this District, certain products and services. DH International seeks to recover monetary damages, attorneys' fees, and costs.

## THE PARTIES

4.      DH International is a Canadian business organized as a private limited company under the laws of Canada, with a principal place of business at 4660 rue Sainte-Catherine E, Montréal, Québec H1V 1Y9, Canada.

5.      DH International is the true and correct owner of the Asserted Patents and holds all rights necessary to bring this action. On July 26, 2023, the attached assignments were filed with the U.S. Patent Office transferring all right, title, and interest from G. Holdings Ltd. to DH International **Exhibit C**.

6.      On information and belief, Defendant Apple is a corporation organized under the laws of the State of California, with a principal place of business at One Apple Park Way, Cupertino, California, 95014.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      The Court has personal jurisdiction over Defendant for at least the following reasons:  (1) Defendant has committed acts of patent infringement in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in this District and elsewhere in Texas, including through their wholly-owned subsidiary entities; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and elsewhere in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with this District, including the physical location at 12545 Riata Vista Circle, Austin, Texas, 78727, the physical location at 5501

West Palmer Lane, Austin, Texas, 78727, and the physical location at 6900 West Parmer Lane, Austin, Texas, 78727, and should reasonably expect to be subject to suit in this District.

9. Venue is proper in this District as to Defendant Apple under the provisions of 28 U.S.C. §§ 1391 and 1400(b) at least because Defendant Apple has committed acts of infringement in this District and has regular and established places of business in this District at 12545 Riata Vista Circle, Austin, Texas 78727, and at 6900 West Parmer Lane, Austin, Texas, 78727.

10. On information and belief, Defendant Apple has thousands of employees within this District. On information and belief, third-party witnesses with knowledge regarding the accused functionality reside within this District.

11. Defendant Apple has committed tortious acts within Texas and this District, and the causes of action set forth in this Complaint arise from those acts. Defendant Apple develops, manufactures, imports, distributes, and sells mobile telephone and computing products that infringe the Asserted Patents, which are, and have been imported, offered for sale, sold (directly or through Defendant's distribution network), purchased, and used in Texas and within this District. Defendant also places infringing products within the stream of commerce, with the knowledge and/or understanding that such infringing products will be sold and/or used in Texas and in this District.

## **BACKGROUND**

12. The inventor and principal owner of DH International, Mr. Joël Gaillard, began to pay attention to electronic payments in 1998-99 after visiting a payment card lounge in Miami. His pioneering work in developing a better technology that offers a new, simple, fast, universal, and secure way to make mobile payments resulted in the Asserted Patents and patents in Canada, India, and China.

13.     DH International has made significant investments in the development of a computer platform and a secure payment and mobile marketing service called MoneyCell, the first Canadian eWallet.   Tests were carried out for a year and a half at Ecole de Technologie Superieure in Montreal to prepare its commercial deployment.   The innovative technology in MoneyCell won several awards in Canada.   *See* https://www.moneycell.com/about.html. Mr. Gaillard has invested upwards of $5 million in developing the MoneyCell Technology and related patent portfolio.

### U.S. PATENT NO. 7,628,333

14.     On April 14, 2003, the United States Patent and Trademark Office duly and legally issued the '333 Patent, titled "Portable Electronic Device Capable of Alternative Data Conveyance Operations Responsive to an Invariable Activation Command," after a full and fair examination.

15.     **Exhibit A** is a true and correct copy of the '333 Patent.

16.     The '333 Patent is valid and enforceable under United States patent laws.

17.     Plaintiff is the owner of the '333 Patent, having received all right, title, and interest in and to the '333 Patent.

18.     Plaintiff possesses all rights of recovery under the '333 Patent, including the exclusive right to recover for past infringement.

### U.S. PATENT NO. 9,022,294

19.     On October 21, 2009, the United States Patent and Trademark Office duly and legally issued the '294 Patent, titled "Portable Electronic Device and Method for Alternative Data Conveyance Operations Responsive to an Invariable Activation Command," after a full and fair examination.

20.     **Exhibit B** is a true and correct copy of the '294 Patent.

21.     The '294 Patent is valid and enforceable under United States patent laws.

22.     Plaintiff is the owner of the '294 Patent, having received all right, title, and interest in and to the '294 Patent.

23.     Plaintiff possesses all rights of recovery under the '294 Patent, including the exclusive right to recover for past infringement.

## THE ASSERTED PATENTS

24.     The claims of the Asserted Patents are directed to a patent-eligible, non-abstract invention.

25.     The Asserted Patents generally provide for a portable electronic device (*e.g.*, a cellular phone) that can be used to communicate with an external data exchange device (*e.g.*, system for performing translation such as POS system and/or transaction server) upon receiving an activation cue.  The portable electronic device contains a switching element (*e.g.*, alternating data conveyance implemented in source code on the portable electronic device), which is assigned different states based on receiving or not receiving an activation cue.   The portable electronic device includes a control device that when selectively triggered issues an invariable activation command (*e.g.*, button click, screen interaction, and/or biometric verification).   When the control device is triggered, different functions will be performed based on the state of the switching element.  The Asserted Patents also provide for methods and systems that employ such portable electronic devices.

## APPLE'S INFRINGING PRODUCTS AND ACTIVITIES

26.     Apple Pay is a mobile payment and digital wallet service offered by Apple.

27.     Apple Pay "is the one way to pay.  It replaces your physical cards and cash with an easier, safer, more secure, and private payment method—whether you're in a store, online, or sending cash to friends or family."  https://www.apple.com/apple-pay/ (last visited Sept. 5, 2023).

5

Apple Pay is accepted "on millions of websites and apps" and is "accepted at over 85 percent of retailers in the U.S. …." *Id.*

28.     Apple Pay is "ready and set. Just go."   https://www.apple.com/apple-pay/ (last visited Sept. 5, 2023).  It can be set up "in seconds…. Just add your credit or debit card to the Wallet app on your iPhone and you're ready to go." *Id.* Online purchases can be made through Apple Pay using an iPhone, iPad, or Mac. *Id.*

29.     Apple designs, makes, uses, offers to sell, sells, imports, supplies, and otherwise distributes "Apple Pay" software and services under the trademark "Apple" (the "Accused Products").  https://www.apple.com/apple-pay/ (last visited Sept. 5, 2023).

30.     Apple Pay is implemented on and currently compatible with Apple portable electronic devices—"Apple Pay is built into iPhone, Apple Watch, Mac and iPad.  No separate app to download."—including at least the iPhone 14 Pro, iPhone 14, iPhone 13, iPhone SE, iPhone 12, iPhone 11, Apple Watch Ultra, Apple Watch Series 8, and Apple Watch SE (collectively, "Apple mobile devices").  *See* https://www.apple.com/apple-pay/ (last visited Sept. 5, 2023);   https://www.apple.com/iphone/   (last   visited   Sept.   5,   2023); https://www.apple.com/watch/ (last visited Sept. 5, 2023).

31.     The current and previous versions of Apple Pay and Apple mobile devices are non- limiting instances of the Accused Products.  The Accused Products practice the claims of the '333 Patent and '294 Patent.

## **COUNT I: INFRINGEMENT OF U.S. PATENT NO.  7,628,333**

32.     Plaintiff restates, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1 – 31 of this Complaint.

33.     Defendant has directly infringed and continues to infringe at least claim 1 of the '333 Patent in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, selling in

the United States, and/or importing into the United States, without authority or license, the Accused Products.

34.     The Accused Products meet all the limitations of at least claim 1 of the '333 Patent.

35.     Specifically, claim 1 of the '333 Patent recites:

A portable electronic device, comprising: an electronic circuit capable of storing data therein, capable of processing data, and capable of data input and output;

a control device operatively linked to said electronic circuit, with an invariable activation command being issued when said control device is selectively triggered;

a user interface device operatively linked to said electronic circuit;

a data transceiver operatively linked to said electronic circuit, said data transceiver being for exchanging data between said electronic circuit and an external data exchange device, and for receiving a selectively emitted activation cue from a source external to said portable electronic device;

a data conveyance switching element operatively linked to said electronic circuit, said switching element being in an activated state upon an activation cue having been received by said data transceiver, and being in an inactive state when no activation cue was received by said data;

power means for providing power to said portable electronic device; wherein upon said control device being selectively triggered to issue and in variable activation command;

if said switching element is in said activated state, a data exchange will be initiated through the instrumentality of said data transceiver for exchanging data between said electronic circuit and an external data exchange device;

if said switching element is in said inactive state, data will be conveyed from said electronic circuit to said user interface device for communicating information to the portable electronic device holder.

36.     A non-limiting and exemplary claim chart comparing the Accused Products to at least claim 1 of the '333 Patent is attached as **Exhibit D** and is incorporated in its entirety.    This description is based on publicly available information.  Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

37.     As in claim 1 of the '333 Patent, upon information and belief, the Apple mobile devices include an electronic circuit capable of storing data therein, capable of processing data, and capable of data input and output.   For example, the Apple iPhone 13 Pro and the Apple iPhone 11 contain an electronic circuit that includes a processor, memory, and various I/O ports.  *See* https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5, 2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

38.     As in claim 1 of the '333 Patent, upon information and belief, the Apple mobile devices include a control device (*e.g.*, a button selection with biometric or PIN verification) operatively linked to the electronic circuit (*e.g.*, a processor, memory, and various I/O ports), with an invariable activation command (*e.g.*, command to initiate a transaction) being issued when said control device is selectively triggered (*e.g.*, initiated within selected context).  For example, the

Apple Pay support site explains that a combination of double-clicking the side button and face ID/passcode, or button click and fingerprint, is required to initiate an in-store transaction with an NFC reader.[1]   *See*  https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).  In addition, Apple Pay can be used for in-app or online purchases by tapping the Apple Pay button. *Id.*

39.    As in claim 1 of the '333 Patent, upon information and belief, the Apple mobile devices include a user interface device (*e.g.*, a display) operatively linked to the electronic circuit (*e.g.*, a processor, memory, and various I/O ports).  For example, the iPhone 11 and iPhone 13 Pro contain a Super Retina XDR OLED display. https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5, 2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

40.    As in claim 1 of the '333 Patent, upon information and belief, Apple mobile devices include a data transceiver (*e.g.*, NFC functionality) operatively linked to the electronic circuit, the data transceiver being for exchanging data (*e.g.*, transaction information) between the electronic circuit (*e.g.*, a processor, memory, and various I/O ports) and an external data exchange device (*e.g.*, a point-of-sale system interface), and for receiving a selectively emitted activation cue (*e.g.*, a signal from an NFC device) from a source external (*e.g.*, a point-of-sale system NFC interface) to the portable electronic device.  For example, the iPhone 11 and iPhone 13 Pro contain NFC chips for NFC communications. https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5,

---

[1] NFC (near field communication) technology allows two devices to communicate when they are in close proximity.

2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

41.     As in claim 1 of the '333 Patent, upon information and belief, the Apple mobile devices include a data conveyance switching element (*e.g.*, Apple Pay software) operatively linked to the electronic circuit, the switching element being in an activated state (*e.g.*, NFC transaction) upon an activation cue (*e.g.*, a signal from an NFC device) having been received by the data transceiver, and being in an inactive state (*e.g.*, idle state) when no activation cue was received by the data transceiver.  For example, Apple mobile devices will enter an NFC transaction state when a user double-clicks the side button and receives a signal from a POS device.  Alternatively, if the user double-clicks the side button in a default state, when no signal from a POS device is received, it will be in an in-app or online transaction state.  The Apple Pay support site explains that a combination of double-clicking the side button and face ID/passcode, or button click and fingerprint, is required to initiate an in-store transaction with a point-of-sale system, such as an NFC reader.  *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).

42.     As in claim 1 of the '333 Patent, upon information and belief, the Apple mobile devices include means for providing power to the portable electronic device (*e.g.*, a processor, memory, and various I/O ports).  For example, the iPhone 11 and iPhone 13 Pro contain batteries to power the electronic devices. https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5, 2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

43.     As in claim 1 of the '333 Patent, upon information and belief, the Apple mobile devices are enabled to perform certain functions upon the control device being selectively triggered

to issue an invariable activation command (*e.g.*, command to initiate a transaction).  For example, Apple mobile devices will enter an NFC transaction state when a user double-clicks the side button and receives a signal from a POS device.  Alternatively, if the user double-clicks the side button in a default state, when no signal from a POS device is received, it will be in an in-app or online transaction state.  The Apple Pay support site explains that a combination of double-clicking the side button and face ID/passcode, or button click and fingerprint, is required to initiate an in-store transaction with a point-of-sale system, such as an NFC reader.  *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).

44.     As in claim 1 of the '333 Patent, upon information and belief, the Apple mobile devices are enabled such that if the switching element (*e.g.*, Apple Pay software) is in the activated state (*e.g.*, NFC transaction), a data exchange (*e.g.*, NFC transaction) will be initiated through the instrumentality of the data transceiver (*e.g.*, NFC functionality) for exchanging data between the electronic circuit (*e.g.*, a processor, memory, and various I/O ports) and an external data exchange device (*e.g.*, the point-of-sale system interface).  For example, Apple mobile devices will enter an NFC transaction state when a user double-clicks the side button and receives a signal from a POS device.  Alternatively, if the user double-clicks the side button in a default state, when no signal from a POS device is received, it will be in an in-app or online transaction state.  The Apple Pay support site explains that a combination of double-clicking the side button and face ID/passcode, or button click and fingerprint, is required to initiate an in-store transaction with a point-of-sale system, such as an NFC reader.  *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).

45.     As in claim 1 of the '333 Patent, upon information and belief, the Apple mobile devices are enabled such that if the switching element (*e.g.*, Apple Pay software) is in the inactive

state (*e.g.*, idle state), data will be conveyed from the electronic circuit (*e.g.*, a processor, memory, and various I/O ports) to the user interface device for communicating information (*e.g.*, opening the Apple Pay application) to the portable electronic device holder. *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).

46.     Defendant makes, uses, sells, and/or offers to sell the Accused Products, which practice at least claims 1, 2, 4, 5, 6, 11, and 13 of the '333 Patent.

47.     In violation of 35 U.S.C. § 271, Defendant is now, and has been, directly infringing the '333 Patent, including through its own use, testing, and sale of the Accused Products.

48.     Defendant has had knowledge of infringement of the '333 Patent at least as of the service of this Complaint.

49.     However, Defendant also has had knowledge of infringement of the '333 Patent by July 26, 2017, when a representative for G. Holdings Inc., the former owner of the '333 Patent, contacted Apple regarding the '333 Patent, it received a response from an Apple representative.

50.     Defendant has directly infringed and continues to directly infringe at least one claim of the '333 Patent by making, using, offering for sale, and selling the Accused Products without authority in the United States.   As a direct and proximate result of Defendant's direct infringement of the '333 Patent, DH International has been and continues to be damaged.

51.     By engaging in the conduct described herein, Defendant has injured DH International and is thus liable for infringement of the '333 Patent, pursuant to 35 U.S.C. § 271.

52.     Defendant has committed these acts of infringement without license or authorization.

53.     As a result of Defendant's infringement of the '333 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

54.     Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this Complaint.  The claim chart depicted in **Exhibit D** is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

### COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 9,022,294

55.     Plaintiff restates, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1 – 54 of this Complaint. .

56.     Defendant has directly infringed and continues to infringe at least claim 1 of the '294 Patent in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, selling in the United States, and/or importing into the United States without authority or license the Accused Products.

57.     The Accused Products meet all the limitations of at least claim 1 of the '294 Patent.

58.     Specifically, claim 1 of the '294 Patent recites:

A cellular phone, comprising:

an electronic circuit capable of storing data therein, capable of processing data, and capable of data input and output;

a user-triggered control device operatively linked to said electronic circuit, said user-triggered control device configured to be operated by a user via one of a

button, a keypad, a tactile screen, and a biometric parameter detector, and after being operated issue an invariable activation command,

with said invariable activation command being issued when said control device is selectively triggered by the user;

a first data transceiver operatively linked to said electronic circuit, said first data transceiver being for exchanging data between said electronic circuit and a first external data exchange device over a first communication link;

a second data transceiver operatively linked to said  electronic circuit, said second data transceiver being for exchanging data between said electronic circuit and a second external data exchange device over a second communication link that is distinct from said first communication link;

a cue receiver operatively linked to said electronic circuit for receiving an activation cue from a source external to said cellular phone;

a data conveyance switching  element operatively linked to said electronic circuit, said switching element being assigned a first state upon an activation cue having been received by said cue receiver, and being assigned a second state when no activation cue was received by said cue receiver;

and power means for providing power to said portable electronic device cellular phone;

wherein upon said control device being selectively triggered by the user to issue said invariable activation command;

if said switching element is in said first state, a first data conveyance operation will be initiated through the instrumentality of said first data transceiver

for sending data from said electronic circuit to the first external data exchange device over said first communication link;

and if said switching element is in said second state, a second data conveyance operation will be initiated through the instrumentality of said second data transceiver for sending data from said electronic circuit to the second external data exchange device over said second communication link.

59.     A non-limiting and exemplary claim chart comparing the Accused Products to at least claim 1 of the '294 Patent is attached as **Exhibit E** and is incorporated by reference in its entirety. This description is based on publicly available information.  Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

60.     As in claim 1 of the '294 Patent, upon information and belief, the Apple mobile devices include an electronic circuit (*e.g.*, a processor, memory, and various I/O ports) capable of storing data therein, capable of processing data, and capable of data input and output. For example, the Apple iPhone 11 Pro Max and iPhone 13 Pro contain electronic circuits that include    a    processor,    memory,    and    various    I/O    ports.    *See* https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5, 2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

61.     As in claim 1 of the '294 Patent, upon information and belief, the Apple mobile devices include a user-triggered control device (*e.g.*, a button selection with biometric or PIN verification) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports), said user-triggered control device configured to be operated by a user via one of a

button, a keypad, a tactile screen, and a biometric parameter detector, and after being operated issue an invariable activation command (*e.g.*, command to initiate a transaction), with said invariable activation command being issued when said control device is selectively triggered by the user (*e.g.*, initiated within a selected context).  For example, the Apple Pay support site explains that a combination of double-clicking the side button and face ID/passcode, or button click and fingerprint, is required to initiate an in-store transaction with an NFC reader.  *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).  In addition, Apple Pay can be used for in-app or online purchases by tapping the Apple Pay button.  *Id.*

62.     As in claim 1 of the '294 Patent, upon information and belief, the Apple mobile devices include a first data transceiver (*e.g.*, NFC functionality) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports), said first data transceiver being for exchanging data (*e.g.*, transaction information) between said electronic circuit and a first external data exchange device (*e.g.*, a point-of-sale system interface) over a first communication link (*e.g.*, NFC).  For example, the iPhone 11 Pro Max and iPhone 13 Pro include NFC chips for NFC communications.  *See*

https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5, 2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

63.     As in claim 1 of the '294 Patent, upon information and belief, the Apple mobile devices include a second data transceiver (*e.g.*, cellular or WiFi functionality) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports), said second data transceiver being for exchanging data (*e.g.*, transaction information) between said electronic circuit and a second external data exchange device (*e.g.*, a networked transaction server) over a

second communication link (*e.g.*, cellular or WiFi) that is distinct from said first communication link (*e.g.*, NFC).  For example, the iPhone 11 Pro Max and iPhone 13 Pro include a WiFi module and an RF transceiver.  *See*

https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5, 2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

64.    As in claim 1 of the '294 Patent, upon information and belief, the Apple mobile devices include a cue receiver (*e.g.*, NFC functionality) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports) for receiving an activation cue (*e.g.*, a signal from an NFC device) from a source external (*e.g.*, a point-of-sale system NFC interface) to said cellular phone.  For example, the iPhone 11 Pro Max and iPhone 13 Pro include NFC chips for NFC communications.  *See*

https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5, 2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

65.    As in claim 1 of the '294 Patent, upon information and belief, the Apple mobile devices include a data conveyance switching element (*e.g.*, Apple Pay software) operatively linked to said electronic circuit (*e.g.*, a processor, memory, and various I/O ports), said switching element being assigned a first state (*e.g.*, NFC transaction) upon an activation cue (*e.g.*, a signal from an NFC device) having been received by said cue receiver (*e.g.*, NFC functionality), and being assigned a second state (*e.g.*, online or in-app transaction) when no activation cue was received by said cue receiver. For example, Apple mobile devices will enter an NFC transaction state when a user double-clicks the side button and receives a signal from a POS device.

Alternatively, if the user double-clicks the side button in a default state, when no signal from a POS device is received, it will be in an in-app or online transaction state.  The Apple Pay support site explains that a combination of double-clicking the side button and face ID/passcode, or button click and fingerprint, is required to initiate an in-store transaction with a point-of-sale system, such as an NFC reader.  *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).

66.     As in claim 1 of the '294 Patent, upon information and belief, the Apple mobile devices include power means for providing power to the portable electronic device cellular phone. For instance, each of the Apple mobile devices include a battery that powers the electronic device. For example, the iPhone 11 Pro Max and iPhone 13 Pro include batteries to power the phones.  *See* https://www.ifixit.com/Teardown/iPhone+11+Pro+Max+Teardown/126000 (last visited Sept. 5, 2023); https://www.ifixit.com/Teardown/iPhone+13+Pro+Teardown/144928 (last visited Sept. 5, 2023).

67.     As in claim 1 of the '294 Patent, upon information and belief, the Apple mobile devices are designed such that upon the control device being selectively triggered by the user (*e.g.*, initiated within a selected context) to issue said invariable activation command (*e.g.*, command to initiate a transaction).  For example, the Apple Pay support site explains that a combination of double-clicking the side button and face ID/passcode, or button click and fingerprint, is required to initiate an in-store transaction with an NFC reader.  *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).  In addition, Apple Pay can be used for in-app or online purchases by tapping the Apple Pay button.  *Id.*

68.     As in claim 1 of the '294 Patent, upon information and belief, for the Apple mobile devices, if the switching element (*e.g.*, Apple Pay software) is in the first state (*e.g.*, NFC transaction), a first data conveyance operation (*e.g.*, NFC transaction) will be initiated through the

instrumentality of the first data transceiver (*e.g.*, NFC functionality) for sending data from the electronic circuit to the first data exchange device (*e.g.*, the point-of-sale system interface) over the first communication link (*e.g.*, NFC).  The Apple Pay support site explains that a combination of double-clicking the side button and face ID/passcode, or button click and fingerprint, is required to initiate an in-store transaction with an NFC reader.  *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).

69.     As in claim 1 of the '294 Patent, upon information and belief, for the Apple mobile devices, if the switching element (*e.g.*, Apple Pay software) is in said second state (*e.g.*, in-app or online transaction), a second data conveyance operation (*e.g.*, cellular or WiFi transaction) will be initiated through the instrumentality of said second data transceiver (*e.g.*, cellular or WiFi functionality) for sending data from said electronic circuit to the second external data exchange device (*e.g.*, a networked transaction server) over said second communication link (*e.g.*, cellular or WiFi).  *See* https://support.apple.com/en-us/HT201239 (last visited Sept. 5, 2023).

70.     Defendant makes, uses, sells, and/or offers to sell the Accused Products, which practice at least claims 1, 2–4, 8–10, 12, and 16–8 of the '294 Patent.

71.     In violation of 35 U.S.C. § 271, Defendant is now, and has been, directly infringing the '294 Patent, including through its own use, testing, and sale of the Accused Products.

72.     Defendant has had knowledge of infringement of the '294 Patent at least as of the service of this Complaint.

73.     However, Defendant also has had knowledge of infringement of the '294 Patent by July 26, 2017, when a representative for G. Holdings Inc., the former owner of the '294 Patent, contacted Apple regarding the '294 Patent, it received a response from an Apple representative.

74.     Defendant has directly infringed and continues to directly infringe at least one claim of the '294 Patent by making, using, offering for sale, and selling the Accused Products without authority in the United States.   As a direct and proximate result of Defendant's direct infringement of the '294 Patent, DH International has been and continues to be damaged.

75.     By engaging in the conduct described herein, Defendant has injured DH International and is thus liable for infringement of the '294 Patent, pursuant to 35 U.S.C. § 271.

76.     Defendant has committed these acts of infringement without license or authorization.

77.     As a result of Defendant's infringement of the '294 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

78.     Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this Complaint.  The claim chart depicted in **Exhibit E** is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

79.     DH International demands a trial by jury on all claims and issues.

## REQUEST FOR RELIEF

DH International respectfully demands judgment against Apple and its subsidiaries and affiliates as follows:

a.     That Judgment be entered that Defendant has infringed one or more claims of the '333 Patent;

b.    That Judgment be entered that Defendant has infringed one or more claims of the '294 Patent;

c.    An award of damages pursuant to 35 U.S.C. § 284, sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement;

d.    An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

e.    That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

f.    That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated:  September 15, 2023

*/s/ David G. Henry*
Texas Bar. No. 09479355
**Munck Wilson Mandala, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
dhenry@munckwilson.com


Meredith M. Addy (*pro hac vice* forthcoming)
**AddyHart P.C.**
10 Glenlake Parkway, Suite 130
Atlanta, Georgia 30328
Telephone: (312) 320-4200 Email:
meredith@addyhart.com

Robert Hart (*pro hac vice* forthcoming)
Brandon C. Helms (*pro hac vice* forthcoming)
**AddyHart P.C.**
401 North Michigan Avenue Suite 1200-1
Chicago, Illinois 60611
Telephone: (949) 337-0568
Telephone: (312) 731-6568 Email:
robert@addyhart.com Email:
bhelms@addyhart.com

*Attorneys for Plaintiff DH International Ltd.*