**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| DH INTERNATIONAL LTD.<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | Civil Action File No. 1:23-cv-01114-RP |

**DH INTERNATIONAL'S RESPONSE TO APPLE'S MOTION TO**
**TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ................................................................................................................ 1

I.   Legal Standards ....................................................................................................... 2

II.  Apple Failed to Demonstrate that Northern California is the Clearly more
     Convenient Venue ................................................................................................... 2

III. The Private Interest Factors .................................................................................. 3

     A.   The Cost of Attendance and Convenience of Willing Witnesses is Neutral or
          Slightly in Favor of Denying Transfer .................................................... 3

     B.   Access to Sources of Proof is Neutral ...................................................... 9

     C.   The Availability of Compulsory Process Factor Strongly Favors WDTX ........... 11

     D.   The Other Practical Problems Factor is Most Likely Neutral ............................. 13

IV.  Public Interest Factors ........................................................................................ 14

     A.   Court Congestion Favors Denial of the Motion to Transfer ................................ 14

     B.   Local Interest Favors Denial of Transfer or is Neutral ........................................ 15

V.   Conclusion ............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Carr v. Ensco Offshore Co.,* No. G-06-629, 2007 WL 760367,
   2007 U.S. Dist. LEXIS 16588 (S.D. Tex. Mar. 8, 2007) ...................................................... 3, 6

*Defense Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) .................................................................................................... 5

*Fintiv, Inc. v. Apple Inc.*,
   No. 6:18-cv-00372-ADA, 2019 WL 4743678,
   2019 U.S. Dist. LEXIS 171102 (W.D. Tex. Sep. 10, 2019 ................................................. 3, 13

*Haptic, Inc. v. Apple, Inc.,*
   No. 1-23-CV-01351-RP, 2024 WL 2954194,
   2024 U.S. Dist. LEXIS 104916 (W.D. Tex., Apr. 15, 2024) ........................................... 10, 13

*HVLPO2, LLC v. Oxygen Frog, LLC,*
   949 F.3d 685 (Fed. Cir. 2020) ............................................................................................... 13

*In re Apple*,
   979 F.3d 1332 (Fed. Cir. 2020) ........................................................................................ 14, 15

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) .................................................................................................... 2

*In re Genentech*,
   566 F.3d at 1347 ..................................................................................................................... 14

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ............................................................................................. 16

*In re HP Inc.*,
   No. 2018-149, 2018 WL 4692486,
   2018 U.S. App. LEXIS 27963 (Fed. Cir. Sep. 25, 2018) ........................................................ 4

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ................................................................................................. 4, 5

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ................................................................................... 2

*InfoGation Corp. v. Google LLC*,
   No. 6:20-CV-00366-ADA, 2021 WL 5547070,
   2021 U.S. Dist. LEXIS 230350 (W.D. Tex. Apr. 29, 2021) .................................................... 4

*Parus Holdings, Inc. v. Microsoft Corp.,*
No. 6:21-CV-00570-ADA, 2022 WL 17420391,
2022 U.S. Dist. LEXIS 218265 (W.D. Tex. Nov. 29, 2022 .................................................... 16

*Polaris Innovations, Ltd. v. Dell, Inc.,*
Civil Action No. SA-16-CV-451-XR, 2016 WL 7077069,
2016 U.S. Dist. LEXIS 167263 (W.D. Tex. Dec. 5, 2016) ...................................................... 4

*Umbra Techs. Ltd. v. VMWare, Inc.,*
No. 1:23-CV-904-DII, 2024 WL 1123592,
2024 U.S. Dist. LEXIS 44002 (W.D. Tex. Mar. 13, 2024 ...................................................... 13

*Weatherford Tech. Holdings v. Tesco Corp.,*
No. 2:17-CV-00456-JRG, 2018 WL 4620636,
2018 U.S. Dist. LEXIS 231592 (E.D. Tex. May 22, 2018) ...................................................... 2

**Statutes**

35 U.S.C. § 271 .......................................................................................................................... 5

**INTRODUCTION**

Plaintiff DH International, Ltd. ("DHI") opposes Apple's Motion to Transfer Venue to the Northern District of California ("NDCA") Pursuant to 28 U.S.C. § 1404(a) ("Motion").  Unlike many transfer cases this Court considers, Apple concedes that it has employees in this district that are dedicated to the development and testing of the accused Apple Pay products.  Indeed, both DHI and Apple agree they will need to compel third-party trial witnesses from its NFC supplier, NXP, which is headquartered in Austin and has employees in Austin dedicated to development of ▮▮▮▮▮▮▮▮

Apple has simply not met its burden to prove that NDCA is clearly more convenient over the Western District of Texas ("WDTX").  Although Apple is headquartered in NDCA and can certainly point to some potential witnesses in that district, it has employees dedicated to the accused product in multiple locations, including WDTX.  In fact, Apple's largest presence outside of California is its offices in Austin, Texas and it has no witness indicating NDCA is the only or even the primary location for development of the accused product.  Given the agreed need to compel testimony from third-party NXP that is based in Austin, any perceived convenience to Apple in NDCA is offset by the convenience of NXP and the fact Apple has such a significant presence in WDTX.

Furthermore, Apple's claim that the time to trial and congestion between WDTX and NDCA is based on out-of-date statistics.  While WDTX and NDCA had comparable civil trial schedules years ago, the most recent stats indicate time to trial in NDCA takes over 4 years, while trials in WDTX take under 2.5 years.  Because Apple fails to establish that the private and public interest factors clearly favor NDCA, its transfer motion should be denied.

## I.      Legal Standards

Apple has the burden of proof when attempting to establish NDCA is a "clearly more convenient" venue than the WDTX.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*").  Such burden "is not met if the movant merely shows that the transferee venue 'is more likely than not to be more convenient'" or "'that litigating would be more convenient for the defendant elsewhere.'"  *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (citing *Volkswagen II*, 545 F.3d at 315).

Instead, Apple must establish "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—*i.e.,* clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* (citing *Volkswagen II*, 545 F.3d at 315 (emphasis in original)).  However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 314.

When considering the evidence presented, the court "must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Weatherford Tech. Holdings v. Tesco Corp.,* No. 2:17-CV-00456-JRG, 2018 WL 4620636, 2018 U.S. Dist. LEXIS 231592, at *6 (E.D. Tex. May 22, 2018).

## II.     Apple Failed to Demonstrate that Northern California is the Clearly more Convenient Venue

DHI does not dispute that it could have brought suit in NDCA.  However, Apple fails to demonstrate how NDCA is the more convenient venue when the relevant factors are properly weighed.  To determine if a case should be transferred, courts weigh private and public interest factors to determine if the factors indicate which of two venues is more convenient.  These factors

include four private interest factors and four public interest factors that, when analyzed, establish this case should stay in the WDTX.

### III.    The Private Interest Factors

Analysis of the evidence presented by Apple regarding the four private interest factors indicates that one factor strongly favors denial of the motion and at most three of the factors are neutral or slightly favor denial of the motion.

### A.    The Cost of Attendance and Convenience of Willing Witnesses is Neutral or Slightly in Favor of Denying Transfer

Apple first contends that NDCA is more convenient because Apple is headquartered in the NDCA, and all of the witnesses it has unilaterally selected to potentially testify for this case just happen to be based outside of WDTX.  "To support a motion to transfer on this ground, the movant must identify key witnesses and provide a brief outline of their likely testimony. … 'The convenience of one key witness may outweigh the convenience of numerous less important witnesses.'"  *Carr v. Ensco Offshore Co.,* No. G-06-629, 2007 WL 760367, 2007 U.S. Dist. LEXIS 16588, at *4-5 (S.D. Tex. Mar. 8, 2007.  But, Apple cannot manufacture support for this factor simply by selecting numerous potential witnesses who live outside WDTX.  *See Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, 2019 U.S. Dist. LEXIS 171102, at *10 (W.D. Tex. Sep. 10, 2019 (rejecting comparisons of long lists of potential witnesses because it could lead parties to "'game' the system").  Apple's largest hub outside of California is in Austin, Texas.  Exh. 1, 2024 Austin Biz Journal Article.[1]  Indeed, not only does Apple employ nearly

---

[1] Numbered exhibits are attached to the Declaration of Robert Hart in Support of Plaintiff's Response to Apple's Motion to Transfer Venue, which will be filed concurrently with the filing of this Response.

██████████████████

10,000 people across all of its business and corporate divisions in Austin, *see id.*; ████████

██████████████████████████████████████████████████████████

██████████████████████████████ Barker Decl. ¶5; Biyani Decl. ¶4; Paaske Decl.

¶¶6-9; Tryggestad Decl. ¶¶1, 4; Diederich ¶¶4-5.  In fact, Apple is regularly moving operations

from California to Austin.  Exh. 1, 2024 Austin Biz Journal (noting report of Apple San Diego

employees required to move to Austin).

Unlike the cases Apple cites, this is not a case where DHI tries to establish venue by

contending Apple only maintains a storefront in the district or has a single employee in the district

where the bulk reside outside the country or district.  *See In re TikTok, Inc*., 85 F.4th 352, 361 (5th

Cir. 2023) (rejecting court's choice to consider factor neutral based on fact that bulk of witnesses

were in China); *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, 2018 U.S. App. LEXIS 27963,

at *2 (Fed. Cir. Sep. 25, 2018) (approving transfer where defendant had office in Texas but

defendant noted it had no employee in the district with decision making authority over accused

product and key third-party Google resided in California); *Polaris Innovations, Ltd. v. Dell, Inc*.,

Civil Action No. SA-16-CV-451-XR, 2016 WL 7077069, 2016 U.S. Dist. LEXIS 167263, at *9

(W.D. Tex. Dec. 5, 2016) (noting NVIDIA had one employee in Austin heavily involved with

products and 2,630 in California); *InfoGation Corp. v. Google LLC*, No. 6:20-CV-00366-ADA,

2021 WL 5547070, 2021 U.S. Dist. LEXIS 230350, at *11-12 (W.D. Tex. Apr. 29, 2021)

(transferring when no witness resided in district and only one lived in Texas generally).

Rather, Apple itself admits that there are employees who work on the accused product in

the district and that it ███████████████████████████████████████████████ with

employees in Austin.  By Apple's own admission, ██████████████████████████

██████████████████████████████████████████████████████████



███████████████████████████████████████████████████ *see also* Barker

Decl. ¶¶1, 5.  Likewise, Tony Diederich stated that ████████████████████████

████████████   Also, his team ████████████████████████████████████████

██████████████████████████████████████████████████   Diederich

Decl. ¶5; Biyani Decl. ¶4; Paaske Decl. ¶¶6-9; Tryggestad Decl. ¶¶1, 4.

In other words, Apple is actively using and, therefore, infringing the patents within the district through at least ██████████████████████████   *See* 35 U.S.C. § 271 (establishing infringement through use of the product); ECF No. 1 ¶¶47, 71 (asserting infringement through testing of the Accused Product); *see also TikTok*, 85 F.4th at 364 (Courts look to "significant connections between a particular venue and the events that gave rise to the suit").

In anticipation of this argument, Apple waves off the significant presence of employees in WDTX that have knowledge of the design, development, and testing of the accused product by arguing their information is "duplicative" of the knowledge possessed by Apple's selected potential trial witnesses.  Motion at 9.  However, there are multiple problems with this argument. First, Apple makes no attempt to explain what "duplicative" information to which it refers and what one employee knows versus another.  Apple fails to explain why an employee in Austin cannot testify to the same "duplicative" information as an employee located in California.  Second, Apple cites no case that permits the Court to transfer venue because an employee in the transferee district has the same knowledge as employees in the transferor district.  The case law is clear that transfer cannot simply be based on where the Defendant would prefer to try the case.  *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) ("[T]he fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer.").

Apple's focus on its own witnesses ignores the significant presence of important third-party witnesses in the district that both DHI and Apple anticipate will testify at trial.  DHI's complaint and Apple's motion acknowledge that the NFC chip manufactured by the third party, NXP, is a key component of the infringement inquiry.  *See, e.g.,* Complaint ¶¶37-44, 62-68 & Exh D (ECF 1-4) p. 7-8 (identifying NFC Chip importance and manufacturer of chip as NXP); Motion at 14.  NXP's corporate headquarters, along with its design and manufacturing groups are located in WDTX.  Exh. 2, NXP contact website listing office https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA.  Furthermore, it is apparent that NXP has employees in the district with relevant knowledge.  While DHI cannot determine every duty and experience of each NXP employee, its Senior VP of R&D, John Quigley, currently holds a position with NXP in Austin, TX and extensive knowledge of "NFC readers" and "Secure Mobile Transactions." Likewise, other engineers, such as Sundarraj Durairaj, work with NXP in Austin on multiple architectures and protocols for NFC. Exh. 3, NXP Employees on system John Quigley and Sundarraj Durairaj LinkedIn Profiles (NOTE: John Quigley is in Virgin Islands, but his LinkedIn profile states his position is in Austin).   It is far easier for NXP, a company with major operations in Austin, TX and a third-party to the suit, to produce witnesses regarding its technology in the WDTX.

Apple alleges that it also expects to bring witnesses from NXP to trial; however, it suggests that NXP witnesses will come from San Diego or Sunnyvale, California.  Motion at 14.  However, this evidence is insufficient to support transfer for multiple reasons.  First, Apple fails to identify the alleged witnesses either by name or by function.  *See Carr v. Ensco Offshore Co.,* No. G-06-629, 2007 WL 760367, 2007 U.S. Dist. LEXIS 16588, at *4-5 (S.D. Tex. Mar. 8, 2007) ("[M]ovant must identify key witnesses and provide a brief outline of their likely testimony").   Second,

Apple's attorney claims that the NXP witnesses are "California-based NXP engineers," Motion at 14, but the declaration of Mr. Bandyophadhay never indicates they are "engineers." He only claims ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████. Bandyophadhay Decl. ¶4. NXP maintains offices in San Diego for both design and sales of its products, thus it is unclear if the NXP employees he refers to are in fact engineers, sales persons, or someone else. Exh. 2, NXP contact website listing office   https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA.   Third, although NXP lists several facilities in the NDCA, it does not list any in Sunnyvale, California. *Id.*  Fourth, even if the NXP employees are engineers and do, in fact, work in Sunnyvale, there is no evidence to suggest those NXP employees are the only relevant employees or have specific knowledge that NXP employees in the district would not have. Mr. Bandyophadhay is ██████████████████████████████████████████████. Bandyophadhay Decl. ¶1.  Neither he nor anyone else at Apple claim ████████████████████ ███████████████████████████████████████████████████████. It is far more likely, that NXP has key witnesses related to the NFC functionality, design, and development at its headquarters in Austin.

Although Apple presents a list of "potential" witnesses it may call, such self-serving evidence is questionable at best. In *Fintiv*, Case No. 6:18-cv-372-ADA, 2019 WL 4743678, 2019 U.S. Dist. LEXIS 171102, at **9-10, Apple provided the same long unilateral list of potential witnesses for the same Apple Pay and Apple Wallet accused products. In that case, the court rejected the notion that it could simply count the number of potential witnesses in NDCA and the number in WDTX to see which one was higher as "it could become an invitation for parties in

future cases to simply 'game' the system by reciting long lists of potential witnesses" and would "ignore[] the information asymmetry between the parties at this stage of the case, which unfairly handicaps the patentee/non-movant as it can only find potential witnesses using public information whereas the alleged infringer/movant has both public and confidential information." *Id.* at **10-11.

There is no question that Apple frequently files motions to transfer cases if they are not within NDCA, and courts have criticized Apple's attempts to groom witnesses with selectively fed knowledge and use language such as "I am not aware…" that attorneys can then use as "authoritative truths" for establishing favorable transfer facts that are unreliable. *See Scramoge Tech. Ltd. v Apple Inc.*, 6:21-cv-00579-ADA, 2022 WL 1667561, 2022 U.S. Dist. LEXIS 93597, **5-14 (W.D. Tex. May 25, 2022). Here, Apple uses witnesses with narrowly focused and specific positions with similarly cultivated declaration language. *See, e.g.,* Bandyopadhyay ¶4-5 ███ ████████████████████████████████████████████████████████ ████████████████████████████████████ Passke Decl. ¶¶10-11 (Same); Kostka Decl. ¶¶5 (Same). Apple then uses that careful language to make broader factual assertions that NDCA was "primary location" ████████████ Motion at 12.

Apple further criticizes the fact that DHI is a Canadian company with no office or witness in WDTX. Motion at 10. However, that is true of every district in the United States. Instead, DHI based its suit in a jurisdiction that balances a significant and relevant presence of both Apple and its ████████████████ in a jurisdiction that was relatively closer to DHI headquarters in Montreal. Based on public information, WDTX offers such a balance of convenience. Accordingly, because there are significant relevant witnesses in both NDCA and WDTX, this factor is neutral or slightly favors keeping the case in the WDTX.

███████████████████████

**B.    Access to Sources of Proof is Neutral**

Next, Apple incorrectly claims that the access to sources of proof factor "strongly favors" transfer to NDCA because the primary location of where Apple's engineers developed Apple Pay is not in WDTX, that ████████████████████████████████████████ are in NDCA or San Diego, and various financing, licensing, and marketing documents are accessed from the NDCA.  Upon closer review, this reasoning does not "strongly favor" transfer.

**First**, Apple cites five declarations to support its claim that ████████████████████ ███████████████████   Motion at 12.  But no declaration cited by Apple actually makes such a statement.   In fact, no declaration claims that █████████████████████ █████████████████████████and any inference from the declaration must be counted in favor of DHI—not Apple.  *See Weatherford Tech.*, 2018 WL 4620636, 2018 U.S. Dist. LEXIS 231592, at *6 (drawing inferences and resolving factual conflicts in favor of non-movant).  In reality, the evidence submitted by Apple indicates that the development and testing of the accused products occurs in multiple locations, including in the WDTX.  While the selected employee declarations Apple cites refer to some development work performed on the accused products in various locations such as Cupertino, San Diego, and Prague, there is *no claim* in any declaration that development work *is not* performed in WDTX.  In fact, Apple witnesses acknowledge that ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

Diederich Decl. ¶5; *see also* Barker Decl. ¶5; Biyani Decl. ¶4; Paaske Decl. ¶¶6-9; Tryggestad Decl. ¶¶1, 4.  Furthermore, as explained previously, a key source of proof for both sides will come from the third-party NXP located in the WDTX.  *See supra* Section III.A.

**Second**, there is no claim that there are any hardcopy documents in any jurisdiction.  In fact, Apple's witnesses repeatedly note that █████████████████████████████████.

████████████████

*See, e.g.,* Passke Decl. ¶11; Tryggestad Decl. ¶5; Diederich Decl. ¶6; Sykora Decl. ¶6; Bandyopadhyay Decl. ¶5; Barker Decl. ¶6; Biyani Decl. ¶5; Kostka Decl. ¶5.  In some cases, the witnesses indicate ████████████████████████████████████, *e.g.,* Bandyopadhyay Decl. ¶5, but there is no indication of what those documents are, how many there are, or whether they are relevant to any issue in the case.  Ultimately, Apple's witnesses indicate ██████████████ ████████████████████████████████ *See, e.g.,* Diederich Decl. ¶6.  While there is no question Apple can access the documents it contends exist from its largest facility in NDCA as it seems to suggest, it offers no reasoning for why it is not equally convenient to access those documents from its team members in its second-largest facility in WDTX.

**Third**, with regards to the only physical evidence Apple does assert, *i.e.*, ███████████ █████████████████████████████████████████████████████████████████████████ ███████.  Moreover, it fails to explain the importance of ██████████████████████ ████████████████   On the contrary, it is clear that Apple also tests the accused products █ ██████████████████████████████ and information related to NXP components would also be located in Austin.  Diederich Decl. ¶5; Exh. 3, NXP Employees on system John Quigley and Sundarraj Durairaj LinkedIn Profiles.

Apple cites to *Haptic, Inc. v. Apple, Inc.,* No. 1-23-CV-01351-RP, 2024 WL 2954194, 2024 U.S. Dist. LEXIS 104916 (W.D. Tex., Apr. 15, 2024), as support that this factor should be weighed in its favor because documents and employees with documents can be found in NDCA, just as in *Haptic*.  Motion at 13.  But, for the technology at issue in *Haptic*, Apple submitted actual declarations that employees who had developed the accused feature were located in California, Washington, and Canada.  *Id.* at 5.  The same cannot be said here.  While Apple certainly submits declarations from employees in NDCA, San Diego, and Prague ██████████████████

the accused product were developed in various places, it cannot discount the fact that ████████
████████████████████████████████ Diederich Decl. ¶5; *see also* Barker Decl. ¶5; Biyani
Decl. ¶4; Paaske Decl. ¶¶6-9; Tryggestad Decl. ¶¶1, 4.

While Apple certainly has some employees throughout the world who work to develop
various aspects of the accused product, there is no evidence or indication that ████████████
████████████████████████████████████████████████████████████
Indeed, Apple's failure to identify ████████████████████████████████ and
acknowledgment that such information ████████████████████████████████
████████████████████████ While Apple suggests that some business documents
related to finance, licensing, and marketing can be found ████████, it is equally notable that NXP,
whom Apple intends to call, is based in WDTX and will likely have easier access to its own
documents there.

At best, the ease of obtaining various sources of proof is relatively balanced between
Apple's sources in NDCA and Apple's sources and third-party sources in WDTX.  Accordingly,
this factor is, at best, neutral.

### C.     The Availability of Compulsory Process Factor Strongly Favors WDTX

The availability of compulsory process strongly favors the denial of Apple's transfer
motion.  Both parties agree that ████████████████████████████████ of the
infringing products, will likely be called as witnesses at trial.  *See, e.g.,* Complaint ¶¶37-44, 62-68
& Exh D. (ECF 1-4) p. 7-8 (identifying NFC Chip importance and manufacturer of chip as NXP);
Motion at 14.  NXP is a third-party with corporate headquarters and approximately 4,000
employees in Austin, Texas.  Exh. 4, Austin American - Statesman Article "Chipmaker NXP
Considers Austin For $2.6 Billion Expansion, up to 800 new Jobs."  NXP performs manufacturing

and design of its products in WDTX.    Exh. 2, NXP contact website listing office
https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA.    It is more
than likely that both parties will require the power to compel NFC and its employees from Austin
to testify.

    Apple asserts that it will compel NXP employees from San Diego and Sunnyvale,
California, to testify based on the declaration of Mr. Bandyopadhyay ███████████████████
████████████████    Motion at 14.  However, it is unclear from his declaration or Apple's motion
what those employees do and whether they have anything relevant to submit in this case.
Furthermore, there is nothing in Apple's evidence to suggest relevant information and witnesses
cannot be found at NXP's corporate offices in Austin.  Apple makes no claim that its *only* contact
with NXP and its relevant NFC component is ███████████████████████████████████████
███████████    Additionally, the identity of the alleged NXP employee in Sunnyvale is in some doubt
as there is no evidence NXP has a corporate office or location in Sunnyvale.  Exh. 2, NXP contact
website listing office    https://www.nxp.com/company/about-nxp/worldwide-locations/united-
states:USA.

    In addition to NXP, Apple further admits that ███████████████████████████████
████████████████████████████████████████.  Paaske Decl. ¶6.  As they
are no longer Apple employees, it may be necessary to compel their testimony through subpoena.

    Apple asserts that this factor favors transfer because it has identified prior art filed 22 years
ago in which one of the inventors may live in NDCA.  Motion at 14-15.  But such potential witness
evidence is decidedly weak as prior art inventors[2] seldom testify at trial, and prior art can easily

---

[2] The issue is the inventor of a prior art patent is typically a lay witness who cannot provide
expert opinion at trial under the guise of lay opinion.  See HVLPO2, LLC v. Oxygen Frog, LLC,

be cherry-picked by the movant at this point in the litigation.  *See Fintiv*, 2019 WL 4743678, 2019 U.S. Dist. LEXIS 171102, at **14, 15-16 (giving location of 8 inventors on 3 prior art reference little weight).  Moreover, Apple offers no explanation of how the prior art may be relevant and why it would need inventor testimony regarding the proposed prior art.  *See id.* at **15-16 (assigning minimal weight to prior art inventors that are unlikely to testify).

Given the existence of multiple third-party witnesses in the district with direct knowledge of the development, use, and components within the accused products, this factor strongly favors denial of the transfer motion.

### D.      The Other Practical Problems Factor is Most Likely Neutral

Under this factor, the court considers whether other problems make the trial of the case in the district "easy, expeditious, and inexpensive."  *Volkswagen II*, 545 F.3d at 315.  DHI agrees with Apple that this factor is likely neutral under prior court decisions.  Although DHI has filed suit under the same patents in another case in this district, has served preliminary infringement contentions in this case, and although the costs of litigating in the district are generally expected to be lower in Austin versus San Francisco, such facts do not generally affect this factor.  *See Umbra Techs. Ltd. v. VMWare, Inc.*, No. 1:23-CV-904-DII, 2024 WL 1123592, 2024 U.S. Dist. LEXIS 44002, at *12-13 (W.D. Tex. Mar. 13, 2024 (finding factor neutral with case and other related cases were in early stages); *Haptic*, 2024 WL 29541942024 U.S. Dist. LEXIS 104916, at**17-18 (rejecting lower costs of hotels, flights, meals, parking, vendors, and other incidentals).

Some courts have considered facts related to time-to-trial factors in each district to determine if one district may be more judicially efficient under this factor.  *See  In re Apple*, 979

---

949 F.3d 685 (Fed. Cir. 2020) (trial court abused its discretion by admitting lay, i.e. non-expert, witness opinion testimony regarding the ultimate questions of obviousness during a jury trial).

F.3d 1332, 1343 (Fed. Cir. 2020).  However, such information is also considered as part of the first public interest factors related to "difficulties flowing from court congestion." *Id.* at 1343 n.4.  As noted subsequently in Section IV.A., these facts support denial of the motion to transfer, and to the extent they should be considered under the private interest factors, the factor would also favor denial of the motion to transfer for the same reasons.

## IV.     Public Interest Factors

Regarding the public interest factors, DHI agrees with Apple that Factors 3 and 4 are neutral to this Court's analysis.  However, Apple's analysis of factors 1 and 2 are based on outdated and incomplete information.  Using up-to-date and complete information, the public interest factors strongly favor denial of the motion to transfer.

### A.      Court Congestion Favors Denial of the Motion to Transfer

This factor considers, based on court congestion,  the "speed with which a case can come to trial and be resolved" in each district.  *In re Genentech*, 566 F.3d at 1347.  Apple's motion contends factor 1 of the public interest favors transfer.  It bases that conclusion on a Federal Circuit case from 2020, Motion at 15-16,[3] which is itself based on a minor difference in civil case time-to-trial statistics of 25.9 and 25.3 months for NDCA and WDTX, respectively.  *Apple,* 979 F.3d at 1343-44.  However, that data is decidedly out of date.  The most recent time-to-trial comparison published by the Administrative Office of the Courts on March 31, 2024 indicates that the time to trial for NDCA has increased far more significantly than WDTX.  While the time to trial in WDTX has marginally increased to 29.5 months, the time to trial in NDCA for civil cases is 49.9 months.

---

[3] Apple's motion cites to *Apple*, 2021 WL 5291804, which ultimately cites through other cases to *Apple*, 979 F.3d at 1343-44.

*See* Table T-3—U.S. District Courts–Trials Federal Judicial Caseload Statistics (March 31, 2024)

*available        at*        https://www.uscourts.gov/statistics/table/t-3/federal-judicial-caseload-statistics/2024/03/31 (Edited Version of Table Attached as Exh. 5).

There is no question court congestion has increased in both NDCA and WDTX, however, the current disparity between the two districts would mean that a transfer of this case is little more than a transfer out of the frying pan and into the fire.  Because the more recent data shows civil cases in WDTX come to trial over 20 months faster than in NDCA using the updated measure that Apple proposes, this factor weighs strongly in favor of denial.

### B.        Local Interest Favors Denial of Transfer or is Neutral

Finally, the local interest in either NDCA or WDTX favors denial or is at least neutral.  The local interest factor considers "not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and *the events that gave rise to the suit*."  *In re Apple*, 979 F.3d at 1345 (emphasis-in-original)(citation omitted).  Here, there is no question that Apple has significant ties to both NDCA and WDTX.  Apple's Austin facility is the second largest facility for Apple and is one of the largest employers in the WDTX.

Apple contends that local interests favor NDCA because "(1) Apple's research, design, and development of the accused technology primarily takes place and is managed there; (2) Apple's headquarters and the relevant portion of its workforce are there; and (3) the majority of Apple's likely witnesses and evidence are there." Motion at 16.  However, the support for these statements is not persuasive.  While Apple certainly submits declarations of employees with specific teams that have employees in various locations, including NDCA and WDTX, no employee suggests the research, design, or development "primarily takes place and is managed" in NDCA or that all

relevant portions of its workforce are in NDCA.  Further still, Apple witnesses could not identify where the ███████████████████████████████████. *See, e.g.,* Diederich Decl. ¶6.

Though Apple cites caselaw favoring transfer even when the defendant has a large presence in the district, those cases provided no evidence that infringement or significant events take place in the district.  *See Parus Holdings, Inc. v. Microsoft Corp.,* No. 6:21-CV-00570-ADA, 2022 WL 17420391, 2022 U.S. Dist. LEXIS 218265, at *32 (W.D. Tex. Nov. 29, 2022 (finding a data center and office with no connection to events did not overcome evidence of a headquarters and primary design teams in transferee district); *see also In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (holding EDTX had "no relevant connection" to the suit and there was a "significant contrast" in the meaningful connections one jurisdiction had over another).  That is not the case here.  Apple itself admits that the development and testing of the accused products ████████████████████████████████████████████████████████████████████████ ███████████████  Furthermore, the WDTX has a public interest in the infringing events because both Apple and DHI have indicated the need for NXP to testify and produce evidence regarding components supplied for the infringing product.  Like Apple, NXP is one of the largest employers in WDTX and, in fact, maintains its corporate headquarters, manufacturing, and design within WDTX.

Although Apple's largest facility is in NDCA, and it has certainly indicated employees in the NDCA with relevant information, Apple and NXPs combined presence and connections to the infringement in the district cannot be ignored.

## V.  Conclusion

While the factors favoring transfer are at best neutral for Apple, the presence of a significant third-party witness whose headquarters is located in the WDTX and where both parties

admit they will be called to testify, the existence of development and testing efforts by Apple on the accused products are located in the WDTX, and the public interest factors of relatively significant difference in time to trial between districts all favor keeping this case in WDTX. Accordingly, Apple's motion should be denied.

August 1, 2024                                    Respectfully submitted,

                                                  /s/ *Robert P. Hart*
                                                  Robert P. Hart
                                                  **ADDYHART P.C.**
                                                  2025 Guadalupe Street
                                                  Suite 260
                                                  Austin, Texas 78705
                                                  949.337.0568
                                                  robert@addyhart.com

                                                  Meredith Martin Addy *(pro hac vice)*
                                                  Charles A. Pannell, III *(pro hac vice)*
                                                  **ADDYHART P.C.**
                                                  10 Glenlake Parkway, Suite 130
                                                  Atlanta, Geogia 30328
                                                  312.320.4200
                                                  meredith@addyhart.com
                                                  770.715.2020
                                                  cpannell@addyhart.com

                                                  Benjamin M. Cappel *(pro hac vice)*
                                                  **ADDYHART P.C.**
                                                  401 North Michigan Ave.,
                                                  Suite 1200-1
                                                  Chicago, Illinois 60611
                                                  732.991.7285
                                                  benjamin@addyhart.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record were served a copy of the above

document and all sealed attachments thereto via email on August 1, 2024

/s/ *Robert P. Hart*

Robert P. Hart